UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN B. MYLES, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 17 C 5516 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| RONALD NEAL, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

John B. Myles ("Petitioner") is serving a 40-year sentence for an armed robbery conviction in Illinois. Presently before the Court is his *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (R. 5, Pet.) For the reasons stated below, the petition is dismissed without prejudice.

## BACKGROUND

Shortly after 7 a.m. on December 3, 2006, a CVS pharmacy in Chicago Heights, Illinois, was robbed. *People v. Myles*, No. 1-14-0034, 2016 WL 7177680, *1-3 (Ill. App. Ct. 2016). Minutes later, a police dispatch was issued announcing the robbery and identifying the robber as "[m]ale black, black coat, with a hood" possessing "a large caliber handgun." *Id.* Shortly after the police dispatch was issued, two Chicago Heights police officers saw a van traveling at a high rate of speed near the area of the robbery. *Id.* The officers watched as the van made several quick turns and failed to stop at two stop signs. *Id.* The officers then pulled behind the van and executed a traffic stop, ordering the driver—later identified as Petitioner—to exit the vehicle. *Id.* One of the officers walked over to the van, and through a window behind the driver's seat saw "a large caliber handgun" on the van's floorboard, as well as a cloth bag, cash, and multiple rolls of

1

change. *Id.* The officer then went inside the vehicle and recovered the handgun and other items. *Id.* Petitioner was placed under arrest. *Id.* In the process of conducting a pat-down, officers discovered a pack of CVS brand batteries in Petitioner's pocket. *Id.* at *4. The officers took Petitioner to the CVS, where three employees identified him as the robber. *Id.* at *1. Petitioner was later charged by indictment with three counts of armed robbery. *Id.* He posted bond and returned to his home in Indiana. (R. 15-7, Pet'r's Mot. at 67.)

In January 2007, while the Illinois charges were still pending, Petitioner was taken into custody by Indiana authorities on two unrelated armed robbery charges. (*Id.*) He was tried and convicted on the Indiana charges and was sentenced to an aggregate term of 75 years in prison. (*Id.*) In February 2009, while he was serving his Indiana sentence, Petitioner filed paperwork pursuant to the Interstate Agreement on Detainers, codified at 735 ILL. COMP. STAT. 5/3-8-9, seeking to dispose of the Illinois armed robbery charges. (*Id.*) In May 2009, he was transferred to Illinois to stand trial on the Illinois charges. (*Id.* at 68.)

Prior to trial, Petitioner filed a motion to quash arrest and suppress evidence, arguing that the police lacked probable cause to conduct a traffic stop or search his van. *Myles*, 2016 WL 7177680, at *1. After a hearing, the trial court denied the motion, crediting the officer's testimony as to what occurred and finding probable cause for the traffic stop and the search of Petitioner's van. *Id.* at *2. Several months later, Petitioner filed a motion to reopen the motion to quash arrest and suppress evidence, arguing that newly discovered photographs of his van required further consideration of the motion. *Id.* The court reopened the motion for the limited purpose of introducing the photographs and examining the witnesses regarding the photographs. *Id.* After a second hearing, the trial court again denied the motion, finding the testimony of the police to be "extremely credible." *Id.*

2

Petitioner also filed a motion to suppress the identifications made by the CVS employees, arguing that the "show-up" procedure used by police was unduly suggestive. *Id.* After a hearing, the trial court denied the motion. *Id.* at *3.

Immediately prior to the scheduled trial, the prosecutor informed the court that one of the CVS employees had just revealed to him for the first time that the employee recalled giving the police a store surveillance video back in 2006. *Id.* However, the employee did not remember the name of the officer he gave it to. *Id.* Petitioner's counsel argued that an investigation was necessary, and the court agreed. *Id.* At a status hearing a few weeks later, the prosecutor informed the court that a thorough search had been conducted and that no video could be located, nor could the officers assigned to the case recall receiving any video from CVS employees. *Id.* Petitioner subsequently filed a motion to impose sanctions, which the trial court denied, finding no evidence of bad faith by the prosecution or the police. *Id.* The court did order that Petitioner would be permitted to cross-examine CVS employees about the video and present other testimony and argument related to the missing video. *Id.*

Thereafter, the case proceeded to trial. *Id.* at *4. Numerous witnesses testified, including the CVS employees, police officers, and Petitioner. *Id.* Petitioner's account was that he had been driving by the CVS store when the police stopped him for no reason. *Id.* He denied committing the robbery and testified that the $5,000 in currency in his van had been withdrawn from a bank. *Id.* The jury found Petitioner guilty of three counts of armed robbery. *Id.* at *5. He was subsequently sentenced to three concurrent terms of 40 years' imprisonment. *Id.*

Petitioner appealed, through appointed counsel, raising the following claims: (1) the trial court erred in denying his motion to quash his arrest and suppress evidence; (2) the show-up identification procedure used by police was unduly suggestive; (3) the trial court should have

given a "missing evidence" jury instruction in light of testimony about the store surveillance video; and (4) his three armed robbery convictions for the same incident violated Illinois's "one act, one crime" rule. (R. 15-2, Pet'r's Br. at 21-66.) The Illinois Court of Appeals rejected the first three claims, but found merit to the fourth claim, and vacated two of the three armed robbery convictions as violative of the state's "one act, one crime" rule. *Myles*, 2016 WL 7177680, at *6-11. With that modification, Petitioner's remaining armed robbery conviction was affirmed. *Id.* at *11.

Petitioner then filed a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising two claims: (1) he was denied the right to a speedy trial under the Interstate Agreement on Detainers, 735 ILL. COMP. STAT. 5/3-8-9; and (2) the trial court should have granted the motion to quash his arrest and suppress evidence. (R. 15-6, PLA at 1-37.) The petition was denied. *People v. Myles*, 80 N.E.3d 5 (Table) (Ill. 2017.) Petitioner did not seek certiorari with the U.S. Supreme Court. (R. 5, Pet. at 2.)

Thereafter, Petitioner filed his federal petition. (*Id.* at 1-6.) Liberally construing the petition, he raises the following claims: (1) his right to a speedy trial was violated; (2) his Fourth Amendment rights were violated in connection with the traffic stop and search of his van; (3) the identification procedure used by police was unduly suggestive; and (4) his rights were violated in connection with the "missing" surveillance video. (*Id.* at 5-6.)

Respondent has answered the petition, arguing that claims 1, 3, and 4 are procedurally defaulted because Petitioner did not raise them in one complete round of state review. (R. 14, Answer at 3-5.) Respondent further argues that the remaining claim is not cognizable on federal habeas review. (*Id.* at 5.) Petitioner filed a reply, arguing that ineffective assistance of counsel

4

should excuse his procedural default of claims 1, 3, and 4, and that claim 2 presents a viable basis for granting federal habeas relief. (R. 20, Reply at 3-19.)

After reviewing the petition and the parties' briefs, it appeared to the Court that Petitioner might still have a state court remedy available to raise certain claims, as the petition makes clear that Petitioner has not yet pursued state post-conviction relief. (*See* R. 5, Pet. at 3.) Accordingly, this Court ordered Petitioner to file a statement indicating whether he wanted the Court to defer ruling on the petition so that he could return to state court, or whether he wanted the Court to rule on the petition based on the current record. (R. 21, Order.) Petitioner responded, and now requests that the Court defer ruling on the petition so that he can return to state court. (R. 22, Statement.) He also asserts that he meets the requirements for a stay of his petition under *Rhines v. Weber*, 544 U.S. 269 (2005), while he returns to state court. (*Id.*)

## ANALYSIS

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted with respect to any claim adjudicated on the merits by a state court, unless the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of the state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the

5

Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court can grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). To qualify for relief, the state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.* at 520-21. This is because federal habeas relief was intended to serve only as a "guard against extreme malfunctions in the state criminal justice systems," and not as "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citation omitted).

Before considering the merits of a claim contained in a federal habeas petition, however, the Court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). The exhaustion requirement promotes "comity" by affording the state courts the first opportunity to address and correct violations of their prisoners' federal constitutional rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Perruquet v. Briley*, 390 F.3d 505, 513-14 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must "fairly present" his federal constitutional claims in one complete round of state review. *Boerckel*, 526 U.S. at 845, 848. To do so, the petitioner must "present both the operative facts and the legal principles that control each claim" at each level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citation omitted). Unless and until state court remedies are exhausted, the petitioner cannot obtain federal habeas relief. 28 U.S.C. § 2254(b)(1)(A).

The companion procedural default doctrine, also rooted in comity concerns, precludes the Court from reaching the merits of a federal constitutional claim when: (1) the claim was

6

presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear that the claim would now be procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Perruquet*, 390 F.3d at 514. A habeas petitioner can overcome a procedural default if he establishes both cause for failing to properly present a claim in state court and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" that prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted).

Applying those standards, the Court agrees with Respondent that Petitioner did not raise claims 1, 3, and 4 in one complete round of state review. However, Petitioner still has a potential state court remedy available, as he has not yet filed a petition for state postconviction relief. *See generally* 725 ILL. COMP. STAT. 5/122-1 *et seq.* A federal habeas court should not adjudicate a petition like this one containing unexhausted claims, because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines*, 544 U.S. at 271, 273. Indeed, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]" *Id.* at 274 (citation omitted).

7

Here, Petitioner expresses a desire to return to state court to pursue state postconviction relief.[1] (R. 22, Statement.) The Court will grant him an opportunity to do so. The only remaining question is whether his petition should be dismissed without prejudice or stayed while the state proceedings are underway.

Under *Rhines*, the Court has discretion to grant a "stay and abeyance" of a habeas petition while the petitioner returns to state court to exhaust unexhausted claims. *Rhines*, 544 U.S. at 275-77. A stay is permitted only in "limited circumstances," however, because if employed too frequently, it would undermine the purposes of AEDPA. *Id.* at 277. A stay "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id.* "It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.* In other words, a stay "effectively excuses a petitioner's failure to present his claims first to the state courts," and is thus warranted only when the petitioner can establish "good cause" for his failure to exhaust his claims before seeking federal habeas relief. *Id.*; *see also Purvis v. United States*, 662 F.3d 939, 945 (7th Cir. 2011) ("We caution that the 'stay and abeyance' of unripe . . . claims should be limited to narrow circumstances where there is good cause for the petitioner's stay request[.]").

Petitioner offers only one conclusory sentence in support of his good cause argument, arguing without elaboration that "he presents to the court good cause for failure to exhaust state

---

[1] It appears that Petitioner intends to argue that certain of his claims were procedurally defaulted in state court due to ineffective assistance of counsel. (R. 20, Reply at 3-7.) "Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default." *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). But the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). In other words, if Petitioner intends to assert attorney error as cause for any procedural default before this Court, he must fully exhaust his claim of ineffective assistance in state court first. *Id.* at 451; *Dellinger v. Bowen*, 301 F.3d 758, 766-67 (7th Cir. 2002) (observing that where ineffective assistance claim sought to be used to excuse procedural default was itself not properly exhausted in state court, the petitioner is considered "fully defaulted").

claims[.]" (R. 22, Statement at 1.) The Court has carefully reviewed Petitioner's statement, as well as his petition and other filings, and cannot discern any basis to conclude that Petitioner had good cause for proceeding directly to federal court instead of first pursuing state postconviction relief. The mere fact that he is *pro se* or lacks legal knowledge does not provide good cause for a stay. *Yeoman v. Pollard*, 875 F.3d 832, 837-38 (7th Cir. 2017); *Wester v. Butler*, No. 14-CV-5352, 2015 WL 3637395, at *4 (N.D. Ill. June 10, 2015) (denying stay under *Rhines* where petitioner failed to articulate good cause for stay, other than making a cursory statement that "time constraints" prevented him from exhausting his claims before proceeding to federal court); *Brown v. Gaetz*, No. 10 C 1463, 2015 WL 1976366, at *7 (N.D. Ill. May 1, 2015) (denying stay under *Rhines* where prisoner failed to demonstrate good cause for failing to exhaust before filing federal petition and observing that "[t]he mere fact that a prisoner acting *pro se* is incarcerated and lacks legal knowledge is insufficient to demonstrate good cause").

Therefore, the Court declines to enter a stay under *Rhines*. The petition is dismissed without prejudice. Petitioner may file a new petition after he exhausts all remaining state court remedies.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus (R. 5) is DISMISSED WITHOUT PREJUDICE.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: August 22, 2018**